# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| REBECCA OWENS, ADDISALEM BERHANU, KATHY TAYLOR, MARY BOSTIC,<br><br>    Plaintiffs,<br><br>    v.<br><br>TELEPERFORMANCE USA,<br><br>    Defendant. | No. 04 C 3645<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

**I. BACKGROUND**

Plaintiffs, former employees of Defendant telemarketing corporation Teleperformance USA ("TP"), were laid off in the fall of 2003 and allege the following three counts against Defendant: (1) racially discriminatory layoff in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) racially discriminatory failure to rehire, also in violation of § 1981; and (3) age and racially discriminatory denial of promotion in violation of § 1981 and Title VII. Defendant's motion for summary judgment is granted in part and denied in part.

**II. STATEMENT OF FACTS**

Plaintiffs, all African-American, were employees that held supervisory titles at telemarketing company TP's Oakbrook Terrace facility. The implementation of the "do not call" list resulted in a decline in TP's business, forcing the company to close call centers and lay off employees nationwide. As part of this downsizing, Plaintiffs were laid off in the fall of 2003, and all were notified that their layoff was caused by a lack of business. All Plaintiffs were told

that they were eligible for rehire, pursuant to TP's policy that employees eligible for rehire must have "met or exceeded [TP's] standards."

Several meetings were held to determine which employees would be laid off. The ultimate decision maker was Patricia Richert, former senior vice president of TP, and during the process Richert sought input from Ed Rundle, former director of the call center, as well as Pat Corrigan, a shift coordinator. Richert, Rundle and Corrigan are all white. Richert did not consult with Yolanda Mays, an African-American shift coordinator.

All thirteen supervisors were considered for layoff, and of these thirteen, seven were African-American, five were white, and one was Hispanic. Each supervisor's performance, seniority, and position were discussed in determining who should be laid off. These are the same factors specified for consideration by TP's written layoff policy. Defendants maintain that Plaintiffs Bostic and Taylor were laid off on the basis of their performance, and Plaintiffs Owens and Berhanu were laid off based on their seniority. In addition to Plaintiffs, two more African-American supervisors were laid off in 2003, and were subsequently rehired. Diannitza Ortiz, a Hispanic supervisor was also laid off, leaving only one African-American and five white supervisors in Plaintiffs' department. Also laid off were three white employees in different departments from Plaintiffs'.

Plaintiffs claim that their layoffs were racially motivated. Plaintiffs point to two retained white supervisors, Marc Gonzales and Debi Sobol, who they claim performed worse than Plaintiffs. Gonzales had nearly equivalent seniority to Plaintiffs Owens and Berhanu. Plaintiffs also contend that Ortiz was not involuntarily laid off, and she requested the layoff because she

was pregnant and near term. The three laid off white employees in other departments either came from a job class of one or a job in which the only other employee was white.

Both parties acknowledge that Gonzales, who was suffering from AIDS and related alcoholism, was being granted a disability accommodation in 2004, but the parties dispute whether this accommodation was in effect or had been requested in 2003, at the time of the layoffs. Defendants claim that it was in effect at the time, citing Richert's testimony that TP did not lay off Gonzales because of his medical condition and the associated accommodations. Corrigan, Gonzales' supervisor, also testified that the accommodation was in effect in 2003. However, witnesses Richert, Corrigan, Rundle, and Gary Scores and Lucy-Jane Baxley, both of whom worked in human resources, could not remember exactly when the accommodation was requested. Rundle testified that he could have learned about Gonzales' issues in 2004, and Mays, another one of Gonzales' supervisors, testified that she didn't learn of any accommodations until after the layoffs occurred.

Plaintiffs further claim that prior to the layoffs, Sobol was removed from her supervisory position because of poor performance, and reassigned for five months. After the layoff, she was reinstated to a supervisory role. Prior to April 2004, TP transferred two white trainers from another facility and assigned them to serve as supervisors.

In October 2003, Plaintiff Owens filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and Defendant responded in its position statement that several white supervisors were also laid off along with Owens. In her deposition testimony, former regional human resource manager Baxley admitted that one of these white employees was not actually a supervisor and that his name was included in the layoff list in error.

3

She also admitted that there was no way for the EEOC to determine that no white sales supervisors from the Plaintiffs' department were selected for layoff.

In 2004, Plaintiffs filed suit against Defendant, alleging the following three counts against Defendant: (1) racially discriminatory layoff in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII");[1] (2) racially discriminatory failure to rehire, also in violation of § 1981; and (3) age and racially discriminatory denial of promotion in violation of § 1981 and Title VII. Defendant now moves for summary judgment on all three of Plaintiffs' claims. In their response, Plaintiffs state that they no longer wish to pursue counts 2 and 3, claiming they will soon be voluntarily dismissing them, and they make no arguments as to these counts. Because Defendant's motion for summary judgment on these counts is unopposed, it is granted, and I will limit my discussion to the remaining count, count 1.

## III. PRELIMINARY ISSUES

Defendant has moved to strike several portions of Plaintiffs' Local Rule 56.1 Statement of Additional Facts. First, Defendant moves to strike paragraphs 9 and 10, on the ground that they are based on statistical summaries compiled by a paralegal for Plaintiffs' counsel, Anita Martinez, who has no personal knowledge as to any of the facts therein. However, these summaries are based on TP's business records. Martinez does not swear to the accuracy of the records, only that she reviewed them and prepared summaries of the information presented in these business records. As the person who prepared the summaries she would be the person most competent to testify as to how they were prepared. She would not be competent to testify as to the

---

[1] In addition to bringing her claim pursuant to § 1981, Plaintiff Owens, the only Plaintiff to file a complaint with the EEOC, has also brought her claim pursuant to Title VII.

4

demographics of Defendant's workforce, but she does purport to be.[2] Defendant's motion to strike these paragraphs is denied.

Defendant next moves to strike paragraphs 20 and 29 on the ground that they are based on inadmissible hearsay. Both paragraphs contain statements made to Plaintiffs by Defendant's agents concerning matters within the scope of their employment. Under Federal Rule of Evidence 801(d)(2)(D), such statements are not hearsay, and Defendant's motion to strike these paragraphs on this basis is denied. However, to the extent that paragraph 20 mischaracterizes the testimony of Rundle, it is deemed stricken and I will not consider it.

Defendant also moves to strike paragraph 29 because it is based on a lack of personal knowledge. A portion of paragraph 29 asserts that Sobol was removed so that Owens could "get the team . . . up to standard," but this statement is without foundation. Owens does testify that she understood the unit was reassigned to her because Sobol's performance was poor, and she also states that she was given extra time to get the unit up to standard, but to the extent that this paragraph asserts that the unit was reassigned for this reason, it is deemed stricken.

Defendant moves to strike paragraphs 24, 28, 32, 34, 35, 36, 37, and 39 on the ground that they are speculative, conclusory, and/or argumentative. Paragraph 24 mischaracterizes the record as it omits the fact in the first interrogatory response, after the general reason for the reduction in force is stated, Defendant refers the reader to the preceding response which sets forth the criteria considered in selecting employees for layoff, including performance as indicated in

---

[2] Defendant does not challenge the authenticity of the documents that are the basis for Martinez' summaries. It instead claims that demographic data is irrelevant here. However, "a plaintiff may use statistics to demonstrate that an employer's proffered nondiscriminatory reason is in fact a pretext for discrimination." *Rummery v. Illinois Bell Telephone Co.*, 97 C 6516, 2000 WL 343469, at *13 (N.D. Ill. Mar. 30, 2000).

5

part by overall attendance and relevant personnel files. This is not inconsistent with Defendant's supplemental interrogatory response which states specifically that Taylor was laid off for attendance and other work-related performance issues. To the extent that it mischaracterizes the record, paragraph 24 is deemed stricken and will not be considered.

Paragraph 35 also mischaracterizes Richert's testimony with regard to Gonzales' performance. She did not testify that it was the lowest score of all the supervisors, nor did she testify that it was below average or less than acceptable. Richert did say that Gonzales' score would have to be examined in relation to all the other scores, and if it was the lowest, then it would be considered below average. To the extent that paragraph 35 mischaracterizes the record, it is deemed stricken.

I see no need to strike paragraphs 28, 32, 34, 36, and 37. The second sentence of paragraph 39 is deemed stricken as it is argumentative.

Lastly, Defendant moves to strike paragraph 27, arguing that the declaration on which it is based is contradictory to the affiant's deposition testimony. In her deposition, Plaintiff Bostic was asked "Have you now told me everything that you felt was unfair or discriminatory at Teleperformance that you can recall as you sit here today?" Bostic responded that she felt her layoff was discriminatory. She stated that she spoke with Rundle and Skores, who explained "in their terms" how people were selected for layoff, referencing a conversation discussed earlier in the deposition where Bostic testified that Rundle told her she was laid off because TP didn't need supervisors. She was then asked "And you've told me everything that was said to you at the time?" to which she responded "Yes." Bostic discussed this conversation with Rundle in detail, testifying to who was present, her response to Rundle's explanation and her ensuing exit. She

expressed at length her view that white seasonal employees and others were treated more favorably than black employees. Yet, Bostic never mentioned that during her conversation with Rundle about the layoff, Rundle told her that the one remaining black supervisor was retained "because we had to keep one," although this statement is included in her subsequent declaration. While the declaration is not in direct conflict with her deposition testimony, the omission of such a significant statement should be treated as conflicting testimony, and for this reason the declaration is stricken. *See Gates v. Caterpillar, Inc*., 513 F.3d 680, 688 (7th Cir. 2008) (treating as conflicting a gender-based comment omitted during plaintiff's deposition but included in a subsequent affidavit).

## IV. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir.2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact.

*Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmovant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). I will accept the nonmoving party's version of any disputed fact only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

## V. DISCUSSION

Plaintiffs in this case are proceeding under the indirect method of proving discrimination. Both parties agree that in order to establish discrimination under the indirect method, Plaintiffs must show: (1) they are members of a protected class; (2) their performance met TP's legitimate expectations; (3) they suffered an adverse employment action; and (4) similarly situated employees who are not members of the protected class were treated more favorably. *Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 559 (7th Cir. 2007); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If Plaintiffs succeed at establishing discrimination, the burden then shifts to TP to articulate "a legitimate, nondiscriminatory reason for its decision[.]" *Barricks*, 481 F.3d at 559. If TP articulates such a reason, the burden shifts back to Plaintiffs to show that TP's stated reason is a pretext, or "phony reason" for discrimination. *Paul v. Theda Medical Ctr., Inc.*, 465 F.3d 790, 794 (7th Cir. 2006).

**Establishing a Case of Discrimination**

Defendant argues that Plaintiffs have failed to establish the second and fourth elements of their discrimination claim. According to Defendant, with regard to the second element, performance, Plaintiff Owens was disciplined on two occasions for failing to fulfill two work-related duties, and in 2002 her 2001 performance was evaluated as below average.[3] From 2001-2003, Plaintiff Taylor had numerous disciplinary actions for tardiness, absenteeism, and failure to properly perform job-related duties. Plaintiff Bostic's file also contained several disciplinary actions, including warnings for tardiness, absenteeism, and failure to properly perform job-related duties as recently as June 13, 2003. Defendant concedes that Plaintiff Berhanu had received no disciplinary actions.

Plaintiffs do not dispute the existence of these corrective actions taken by TP, but instead maintain that, notwithstanding the disciplinary measures, Plaintiffs have "met or exceeded [TP's] standards" as evidenced by the fact that each Plaintiff was eligible for rehire. For this reason, Plaintiffs argue, a reasonable jury could find that Plaintiffs were performing their duties satisfactorily at the time of the layoff. TP's rehire policy and the fact that Plaintiffs were eligible for rehire do create a material issue of fact as to whether Plaintiffs met TP's employment expectations. Therefore, summary judgment for Defendant on the basis of this prong is inappropriate.

Next, Defendant argues that Plaintiffs cannot establish that similarly situated employees outside of the protected class were treated more favorably. In order to be similarly situated, an

---

[3] There is some disagreement as to whether or not Owens actually received the evaluation since the document's execution page does not bear her signature, pursuant to TP's policy requiring supervisors to acknowledge receipt of their evaluations.

employee must be comparable to Plaintiffs "in all material respects." *Bio v. Federal Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005). In determining whether two employees are "directly comparable," courts must consider whether the employees "(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications-provided the employer considered these latter factors in making the personnel decision." *Id.* (citation omitted).

Plaintiffs identify two white supervisors, Marc Gonzales[4] and Debi Sobol, and argue that they are similarly situated; however Defendants suggest that Gonzales and Sobol are not, in fact, similarly situated. Pursuant to TP's layoff policy, the criteria that Richert considered to determine which supervisors should be laid off were length of service (from date of hire), job performance, and position in department, in no particular order. Defendants assert that Sobol's performance was superior to any of the Plaintiffs', and that Gonzales was held to different performance standards by virtue of the accommodation granted him because he suffered from AIDS and related alcoholism.

There is no evidence to suggest that Sobol was any more qualified for the position than Plaintiffs. Richert testified that at the time of her deposition, she would have considered Sobol her second-best supervisor, behind Rashida Kilgore (an African-American employee). But Richert also testified that at the time of the layoffs, she did not know what Sobol's supervisory

---

[4] At one point in its response to Plaintiff's additional statement of facts, Defendant admits that Marc Gonzales is white, however, in a separate response, Defendant indicates that Gonzales is actually Hispanic. Because Defendant presents no support for this contention, I must disregard it and operate under the assumption that Gonzales is indeed white.

responsibilities were[5] nor could she with any certainty remember the quality of her performance. Plaintiffs point to Owens' testimony that prior to the layoffs, Sobol lost supervisory authority over the unit she had been assigned due to poor performance. Furthermore, Defendants admit that Corrigan, when consulted by Richert and Rundle regarding Sobol, who was also being considered for layoff, described her as "a burnout." Drawing all references in favor of Plaintiffs, a reasonable jury could find Sobol to be similarly situated to Plaintiffs with regard to the quality of her performance. Because "[a] single comparator will do [and] numerosity is not required[,]" summary judgment for Defendant is inappropriate on this prong.[6] *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 406-07 (7th Cir. 2007).

**Pretext**

Where Plaintiffs do establish a case of discrimination, the burden then shifts to Defendants to articulate a legitimate, non-discriminatory reason for the layoffs at issue. If TP articulates such a reason, the burden shifts back to Plaintiffs to show that TP's stated reason is a pretext, or "phony reason" for discrimination.

In this case, where there is a genuine issue of fact as to whether Plaintiffs Owens, Taylor and Bostic were meeting TP's expectations, TP can prevail on its motion for summary judgment

---

[5] It is worth noting that Defendants do not argue that Sobol was not a supervisor at the time of the layoffs. Their arguments appear to be premised on the assumption that Sobol was indeed employed in a supervisory position at the time of the layoffs since they do not contend that she held a job description different from that of the Plaintiffs.

[6] There is also some dispute as to whether or not, at the time of the layoffs, Gonzales was being accommodated for his disability. It is undisputed that in 2004 Gonzales was being accommodated, but Defendant contends that his accommodation was already in progress at the time of the 2003 layoffs and that he was subject to a different set of performance standards. I need not address this issue as part of the similarly-situated-employee analysis, but will discuss it further infra.

only if it can successfully show that there was a legitimate, non-pretextual, and non-discriminatory reason to lay off Plaintiffs. Plaintiffs admit that the 2003 implementation of the "do not call" list significantly damaged TP's business and forced the company to close call centers and lay off employees. An economic downturn in the industry is a legitimate, non-discriminatory reason for a reduction in force. *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1043-44 (7th Cir. 2000).

But Plaintiffs have demonstrated a genuine issue of fact as to whether they can establish pretext. "Pretext...means a lie, specifically a phony reason for some action." *Hunter v. Habegger Corp.*, No. 97-2133, 1998 WL 104635, at *12 (7th Cir. 1998) (citation omitted). "To show pretext, [Plaintiffs] must identify such weaknesses, implausibilities, inconsistencies, or contradictions in the purported reasons that a jury could find them unworthy of credence and hence infer that [Defendant] did not act for the asserted non-discriminatory reasons." *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 541 (7th Cir. 2007). If TP honestly believed the reasons stated for the layoffs, Plaintiffs lose, even if TP's reasons are "foolish, trivial or baseless." *Id.*

Plaintiffs attempt to create a mosaic of evidence that could permit a jury to find that TP's reasons for selecting Plaintiffs for layoff were pretextual, and they point to several suspect actions on the part of Defendants to support this theory.

First, Plaintiffs claim that TP's decision maker Richert failed to follow TP's layoff policy by failing to consider the performance of Gonzales and Sobol and failing to weigh their performance against that of Plaintiffs. Plaintiffs argue that Gonzales was a far worse performer than all Plaintiffs, and it is undisputed that he was on probation for absenteeism at the time of the layoff. It is undisputed that in 2004 Gonzales was being accommodated for his health problems, but the parties do disagree about when the accommodation began. According to Defendants, the

12

accommodation was in effect at the time of the layoffs and Gonzales was subject to a different set of performance standards than Plaintiffs. Richert testified that she did not know when Gonzales informed TP of his medical condition, but that Gonzales was not laid off in 2003 because of his medical condition and the resulting accommodations, including a reduced work schedule. Corrigan, Gonzales' supervisor, testified that in 2003 he received a directive from HR to accommodate Gonzales.

In a related argument Plaintiffs contend that TP's stated reasons for not laying off Gonzales are unworthy of credence. They maintain that a reasonable jury could discredit Richert's purported reliance on Gonzales' accommodation for not laying him off in light of the fact that Mays, Gonzales' direct supervisor, learned of an accommodation after the layoff, Rundle and Richert both testified that they did not know when Gonzales requested the accommodation, Gonzales' accommodation was not raised until years after the layoff occurred, and it would have been unreasonable for TP to retain Gonzales simply because of his disability especially in light of the disciplinary actions against him. These assertions support a finding that Richert may not have honestly relied on Gonzales' accommodation as the reason for not selecting him for layoff.

Plaintiffs make a similar argument with regard to Sobol, claiming that Richert's testimony is at best ambiguous. Richert testified in 2007 that Sobol would be her second-best supervisor, but when asked about her opinion of Sobol at the time of the layoff, Richert testified that she was uncertain as to her impression of Sobol's performance. It is undisputed that Sobol's team was reassigned to Owens, and that for the five months prior to the layoff, Owens was not performing in a supervisory capacity. Richert testified to the possibility that Sobol may have been assigned to a special project for part of that time, but this testimony is largely unsupported.

Furthermore, Plaintiffs maintain that a reasonable jury could find that Sobol's poor performance would have moved her to the front of the layoff line. In support of this proposition, Plaintiffs point to Owens' testimony that Sobol wasn't performing her supervisory duties well at the time Owens was assigned to replace her, the fact that at the time of the layoffs Sobol was not assigned to a supervisory position, and that Corrigan described Sobol to Richert and Rundle as "a burnout." These assertions certainly shed some doubt on whether Richert honestly believed that at the time of the layoffs Sobol was a stronger performer than Taylor or Bostic.

Next, Plaintiffs argue that Richert's deviation from TP policy by virtue of her failure to document her layoff decisions supports an inference of pretext. The Seventh Circuit has held that "an employer's failure to follow its own internal employment procedures can constitute evidence of pretext." *Rudin v. Lincoln Land Comm. College*, 420 F.3d 712, 727 (7th Cir. 2005) (citing *Giacoletto v. Amax Zinc Co., Inc.*, 954 F.2d 424, 427 (7th Cir. 1992) (Defendant's failure to follow procedures for helping employees to overcome deficiencies was evidence that firing of the plaintiff because of his deficiencies was a pretext.)). Such conduct may reasonably support an inference of pretext.

In further support of their position, Plaintiffs argue that Richert's testimony is "riddled with inconsistencies" and supports an inference that Richert was holding African-American supervisors to a higher performance standard. I am not persuaded by this argument. Plaintiffs point to Richert's testimony that a supervisor's probationary status would certainly factor in to her analysis, but she did not consider Gonzales' probation when she decided not to lay him off. Moreover, Plaintiffs note that Richert testified that seniority, performance, and position would be considered in the layoff decision, but she considered Gonzales' disabled status. However, in light of Richert's testimony that Gonzales was not laid off because of the accommodations afforded to

14

him, it is difficult to see how Richert's testimony on the issue is inconsistent. According to Richert, Gonzales was held to a different performance because of his accommodation and accompanying reduced work schedule. This is consistent with Richert's testimony that she considered seniority, performance, and position, in determining who should be laid off.

Plaintiffs next point to Richert's testimony that Taylor's performance was less than satisfactory, contrasting it with her testimony that Taylor (and the other Plaintiffs) were eligible for rehire under TP's policy, which required eligible employees to "meet or exceed" performance standards. There is no inconsistency with regard to Richert's testimony on the issue of Taylor's layoff. There was a work shortage necessitating a reduction in force - Taylor's performance was the primary reason for her layoff. The Seventh Circuit has recognized that "even if an employee would not have been fired under normal circumstances, in a reduction in force, someone has to go. It is usually the least qualified or least productive employee." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 693 (7th Cir. 2006). Even if Taylor's performance was sufficient to be considered for rehire, it is undisputed that she had received numerous disciplinary actions for tardiness, absenteeism, and failure to properly perform job-related duties. Such disciplinary actions reflect on Taylor's job performance, one of the three factors Richert considered in determining who should be laid off.

Plaintiffs also note that Richert testified that she did not rely on any specific documents in selecting Taylor for lay off, yet TP's interrogatory answers reference several disciplinary write ups in a response to a question seeking the reason for Taylor's lay off. Again, it is difficult to see an inconsistency here. Richert testified that Taylor was laid off because her performance was less than satisfactory, and the write ups document occasions of this substandard performance.

15

Even if we do view them as inconsistent, it does not appear to be particularly material. The inconsistency argument does little to help Plaintiffs' cause.

Plaintiffs next cite the fact that TP laid off twenty African-Americans in 2003 as further evidence of pretext. Plaintiffs admit that Defendants did lay off three white employees that same year, but these employees held positions that no African-Americans held. This, Plaintiffs contend, demonstrates that when Defendant was faced with a choice between laying off a black worker or a white worker, it consistently chose to lay off the black worker. The circumstantial evidence put forth by Plaintiffs supports this contention.

Plaintiffs also argue that a jury can infer pretext from the fact that TP allegedly lied to the EEOC when responding to Owens' claim by failing to explain that the three white employees came from a job class of one or a job in which the only other employee was white, and that these employees were not similarly situated. In support of this proposition, Plaintiffs cite *McInnis v. Alamo Comm. College Dist.*, 207 F.3d 276, 283 (5th Cir. 2000). However, in *McInnis*, Defendant's report to the EEOC contained statements that Defendant knew were false when they were made. No such admission has been made in this case.

Finally, Plaintiffs argue that a jury can infer pretext from the fact that Richert did not solicit input on the layoff decisions from Mays even though she sought and received input from Corrigan. In light of the facts alleged in this case, there appears to be little reason for Richert to seek input from Mays when those Plaintiffs under her control - Owens and Berhanu - were laid off based on their lack of seniority, an objective factor that is easily ascertained through company records. Plaintiffs Taylor and Bostic, both laid off for performance reasons, were under the direct supervision of Corrigan and it is certainly sensible that in evaluating these Plaintiffs' performances she would have sought input from their direct supervisor. However, Plaintiffs

16

point out that the employees making the lay off decisions were all white, which is further support for their claims of discrimination. *Taylor v. Teletype Corp.*, 648 F.2d 1129, 1135 (8th Cir. 1981).

Although not all of Plaintiffs' arguments are persuasive, they have succeeded in demonstrating an issue of fact as to whether TP's stated reasons for laying off each individual Plaintiff are pretexts. Plaintiffs admit that they were notified that their layoffs were caused by a lack of business or work shortage, and that Bostic was told that the number of supervisors needed to be reduced. Furthermore, Owens and Berhanu were the least senior of the supervisors being considered for lay off, and Richert testified that Bostic and Taylor were selected for lay off for performance reasons. The parties do not dispute that there were numerous disciplinary actions filed against Bostic and Taylor. But Plaintiffs have presented evidence that Richert was aware of information that suggested that Sobol and Gonzales were worse performers than Plaintiffs.

Defendants maintain that an attack on TP's decision to retain Sobol and Gonzales is an impermissible attack on TP's business judgment. The Seventh Circuit has recognized that courts should not sit in judgment of an entity's business decisions, and should instead examine whether defendant honestly believed in the explanation it offered for laying off plaintiffs, "even if the reasons are foolish or trivial or even baseless." *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 984 (7th Cir. 1999). But Plaintiffs are not attacking Richert's business judgment. They instead attempt to demonstrate that Richert did not honestly believe in her stated reasons for choosing Plaintiffs for lay off. Because Plaintiffs have put forth evidence such that a reasonable jury could find pretext, Defendant's motion for summary judgment on count 1 is denied.

## VI. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied as to count 1, and granted as to counts 2 and 3.

ENTER:

James B. Zagel
United States District Judge

DATE: November 4, 2009